370 P.2d 788

**Hugh R. ANGLETON, Plaintiff-Respondent,**

v.

**Ludmilla Waskowsky ANGLETON,
Defendant-Appellant.**

*No. 8899.*

Supreme Court of Idaho.

March 23, 1962.

Rehearing Denied May 3, 1962.

Richards, Haga & Eberle, Boise, for appellant.

Langroise, Clark & Sullivan, Boise, for respondent.

KNUDSON, Justice.

The appellant, Ludmilla Waskowsky Angleton, and respondent, Hugh R. Angleton, intermarried on September 11, 1948. One male child, Peter John, was born November 13, 1955, the sole issue of said marriage.

The controversy between these parties was initially brought to the attention of the trial court in a habeas corpus action, being, post, 201, 370 P.2d 798, commenced by appellant to secure custody of the child. Pending the hearing in the habeas corpus proceedings respondent filed an action seeking a divorce on the ground of extreme cruelty, and custody of the minor child. Appellant countered with a cross-claim for separate maintenance and also sought custody of the child. Upon application of appellant the habeas corpus and divorce actions were consolidated for trial and decision.

After the introduction of much evidence on behalf of the respective parties the trial before the Honorable M. Oliver Koelsch, District Judge, sitting without a jury, was concluded on June 25, 1959. On September 24, 1959, Judge Koelsch caused to be filed his memorandum decision in the case. On the succeeding day, September 25, 1959, Judge Koelsch resigned his office. Promptly thereafter, the Honorable J. Ray Durtschi was regularly appointed to fill the vacancy created by the resignation of Judge Koelsch, and he has since continued as successor of Judge Koelsch in the office of District Judge of the Third Judicial District.

On October 13, 1959, appellant moved for a new trial which was denied by order filed March 25, 1960.

After having considered the sufficiency of Judge Koelsch's memorandum decision as constituting adequate findings of fact and conclusions of law, Judge Durtschi, on October 30, 1959, caused to be made and filed an order directing entry of judgment consistent with the findings of fact and conclusions of law made and contained in the memorandum decision. On the same day a judgment and decree was entered and filed granting respondent's request for a divorce and awarding him custody of the minor child, also dismissing appellant's cross-claim.

Appeal is taken from the judgment and order denying appellant's motion for a new trial.

■ One of the important assignments of error is lodged against the action of the court below in entering its order directing that judgment and decree be entered on the basis of the memorandum decision of Judge Koelsch in that appellant contends that the decision is not sufficient in form or contents to constitute findings of fact and conclusions of law to support a judgment.

■ The findings of fact and conclusions of law required by Rule 52(a) I.R.C.P. constitute the trial court's decision as to what are the ultimate facts established by the evidence and the conclusions of law resulting therefrom upon which a judgment may be entered accordingly. The action for divorce and the cross-claim were filed after the effective date of the Idaho Rules of Civil Procedure and are governed thereby. (I.C. § 1–215; Rule 86 I.R.C.P.)

■ Rule 52(a) provides that:

"* * * the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; * * * If an opinion or memorandum decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein."

No special form is required.

■ Rule 63 I.R.C.P. is also applicable to the problem here presented and provides as follows:

"If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial."

Among the other disabilities referred to in the rule includes "resignation from office". (7 Moore's Federal Practice, 2nd Edition, 1453, Par. 63.03). It is clear that if the trial judge has rendered a decision in the form of findings and conclusions, his successor has the power to render judgment thereon without a trial de novo. Rule 63 I.R.C.P.; State ex rel. Bloom v. Superior Court, King County, 171 Wash. 536, 18 P.2d 510; Case v. Fox, 138 Ore. 453, 7 P.2d 267.

■ Whatever may have been the tendency under the practice prior to the adoption of Rule 52(a), it is clear that under

said rule there is no necessity for over-elaboration of detail or particularization of facts.

In considering the detail which the findings and conclusions should contain, it is helpful to review decisions of Federal Courts relative to Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. which is almost identical to Rule 52(a) I.R.C.P. In the Committee Note of 1946 to Subdivision (a) (5 Moore's Federal Practice, 2nd Edition, 2606) it is stated that "These findings should represent the judge's own determination and not the long, often argumentative statements of successful counsel; * * * the judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." See also United States v. Forness (C.C.A.2d, 1942) 125 F.2d 928. Findings should not be discursive; they should not state the evidence or any of the reasoning upon the evidence, Petterson Lighterage & Towing Corp. v. N. Y. Central R. R. Co. (C.C.A.2d 1942) 126 F.2d 992. The following quotation is from 5 Moore's Federal Practice, 2nd Edition, 2643, Par. 52.05(1), a paragraph entitled "General Analysis" in which said rule is discussed:

"A scientific distinction between fact and law is not workable. Nor would such a distinction serve the purpose behind Rule 52, which is to aid the trial court in making a correct appraisal of the evidence and the law to the end that a sound decision is made, to show what has been adjudicated for future purposes for res judicata and estoppel by judgment, and to aid the appellate court where an appeal is taken."

In Merrill v. Merrill, 83 Idaho 306, 362 P.2d 887, this Court stated:

"The purpose of requiring findings of fact and conclusions of law is to aid the appellate court by affording it a clear understanding of the basis of the decision of the trial court * * * the absence of findings may be disregarded by the appellate court if the record is so clear that the court does not need their aid for a complete understanding of the issues."

In Makah Indian Tribe v. Moore, D.C., 93 F.Supp. 105, the trial judge orally announced his decision which was transcribed by the reporter. The trial judge died before formal findings and conclusions were submitted. The power of any other judge to sign the formal judgment in accordance with the decision announced by the trial judge was challenged. The successor judge found that the opinion of the trial judge indicated the factual basis for the ultimate conclusion and provided a clear understanding of the basis of the decision and entered judgment accordingly. See also, Woodruff

v. Heiser, 150 F.2d 873 (C.C.A.10th, 1945); Western Pac. R. R. Corp. v. Western Pacific R. Co., 197 F.2d 994 (C.C.A.9th, 1951); Carr v. Yokohama Specie Bank, Ltd., 200 F.2d 251 (C.C.A.9th, 1952).

In the instant case the memorandum decision of the trial court consisted of in excess of 820 words and Judge Durtschi, after carefully examining it, stated:

"I find that Judge Koelsch's memorandum decision indicates and provides a clear understanding of the factual basis and legal reasons for his decision that the plaintiff should prevail and that the defendant should not, and when considered together with permissible inferences and presumptions (Koser v. Bohemian Breweries, 69 Idaho 33, 202 P.2d 398) the findings and conclusions contained therein are adequate under the circumstances. I have therefore concluded that findings of fact and conclusion have been filed in the action within the intent and meaning of Rule 63, I.R.C.P., and that I have the power, under that rule, to perform the duty of signing the formal judgment and that in the exercise of the discretion conferred by Rule 63 it is appropriate and proper that I do so.

We find that the conclusion reached by Judge Durtschi was correct.

Our further inquiry is whether the trial court made a finding on the material issues raised by the pleadings involved. The issues created by the pleadings are few. Under respondent's complaint the principal allegations are that

(1) respondent and appellant were married September 11, 1948, which fact is admitted by appellant;

(2) respondent resided in Idaho for more than two months prior to the commencement of his action. This allegation is denied by appellant;

(3) one child was born the issue of the marriage, which appellant admits;

(4) there is no community property, which is also admitted by appellant;

(5) respondent is, and appellant is not, a fit and proper person to have custody of the child. This is denied by appellant;

(6) appellant has been guilty of such extreme cruelty as justifies the granting of a divorce to respondent, which allegation is denied by appellant.

Under the cross-claim appellant seeks separate maintenance and an award of $300.00 per month; custody of the child; and an additional award of $9000.00 for support allegedly due, together with transportation expenses. Respondent denies all allegations of the cross-claim except the fact of marriage and birth of the child.

This Court has repeatedly held that findings of fact will be liberally con-

strued in favor of the judgment and on appeal this Court is entitled to draw the necessary inferences from the trial court's express findings in order to support the judgment. Cazier v. Economy Cash Stores, 71 Idaho 178, 228 P.2d 436; Gem State Lumber Co. v. Galion Irr. Land Co., 55 Idaho 314, 41 P.2d 620; Dickey v. Clarke, 65 Idaho 247, 142 P.2d 597. Rule 1 I.R.C.P. specifically provides that the rules (including 52(a)) shall be "liberally construed to secure the just, speedy and inexpensive determination of every action and proceeding".

■ Appellant complains that the memorandum decision does not contain a finding that respondent was a resident of Idaho for six full weeks next preceding the commencement of the action for divorce. No contention is made that the corroborated evidence introduced by respondent would not support such finding. Respondent's evidence clearly establishes that he complied with the statutory requirement as to residence. There was no conflicting evidence on the issue of residence introduced on the part of appellant. A decision regarding appellant's contention rests upon the inference to be drawn from the language used in the trial court's memorandum decision.

The court specifically found that "The court has jurisdiction to grant to any party whatever relief is consistent with the pleadings and the evidence". Respondent contends that the ultimate fact to be found was whether the court had jurisdiction to grant the divorce and that "Inherent in this [above quoted] finding was the fact that the residence was bona fide and had continued for at least six full weeks before the action was commenced. When the court found that it had jurisdiction, it necessarily found that the elements of jurisdiction had been established". There is merit to this contention.

In Robinson v. Robinson, 70 Idaho 122, 212 P.2d 1031, it was contended that the statutory requirement of six weeks residence had not been shown and the court said:

> "When the complaint was filed and service had, it became necessary for the court to entertain the suit to the extent of determining whether it had jurisdiction of the res. That is, the court was required to determine whether plaintiff had established a domicil in Idaho. * * * If the court determines that it has jurisdiction it will proceed to try other issues raised and enter judgment. If it determines that it does not have jurisdiction it will not try the other issues, but will dismiss the action without judgment on the merits."

Substantially the same reasoning was applied in Walker v. Walker, 45 Nev. 105, 198 P. 433, in which case the residence of

**194**

the plaintiff was in question and the court said:

"We are also of the opinion that where the bona fides of plaintiff's residence is attacked by a spouse charged with cruelty, a personal element is injected into the issue of residence, and where the trial court finds upon a substantial conflict in the evidence in favor of the plaintiff and *assumes jurisdiction,* and refuses to find that plaintiff's residence was a fraud upon its jurisdiction, *its finding imports* that the residence was in good faith, and such finding, when supported by the testimony on behalf of the plaintiff, cannot be disturbed on appeal." (emphasis supplied)

The court also specifically found "that plaintiff should be granted a divorce" and since I.C. § 32–701 provides that a divorce must not be granted unless the residential requirement has been met, the language used (as hereinbefore quoted) imports, and a reasonable inference to be drawn therefrom is, that respondent's residence within this state was of such nature and duration as is necessary to meet the statutory requirement, otherwise the court could not have found that respondent was entitled to a divorce.

■ Appellant contends the trial court's conclusion that appellant was guilty of extreme cruelty is not supported by competent evidence. The term "extreme cruelty" is defined in I.C. § 32–605 as being "The infliction of grievous bodily injury or grievous mental suffering upon the other by one party to the marriage". In Donaldson v. Donaldson, 31 Idaho 180, 170 P. 94, this Court quoted with approval the following:

"It is well recognized that no exact inclusive and exclusive definition of legal cruelty can be given, and the courts have not attempted to do so, but generally content themselves with determining whether the facts in the particular case in question constitute cruelty or not. Especially, according to the modern view, is the question whether the defending spouse has been guilty of legal cruelty a pure question of fact to be resolved upon all the circumstances of the case."

Facts in detail or excerpts of evidence are not set out in the trial court's memorandum decision, however, in explanation of its brevity, the court stated:

"The trial occupied two days; much evidence was submitted. The parties, of course, are mindful of the testimony, and to repeat it now would only serve to further humiliate them. Who would benefit from an opinion setting out the facts in stark detail, or from extended comments relating to the behavior of the respective parties?

"A decent regard for the welfare of the child, as well as the feelings of the parties, impels me to be very brief."

As to the acts of cruelty on the part of appellant, the trial court stated that:

"A fair evaluation of the entire record convincingly demonstrates that plaintiff's complaint has merit and that defendant's behavior amounts to cruelty so extreme as to require that a decree of divorce be entered.

\*　　\*　　\*　　\*　　\*　　\*

"Defendant is possessed of the temperament—though unfortunately not the talents—of a 'prima donna', giving that term its colloquial meaning. She has, on numerous occasions, behaved miserably toward her husband and child and throughout the entire marriage (and even shortly before) she frequently deceived the plaintiff in matters that were of vital concern to him and to the success of the union.

"Conversely, plaintiff is quiet, stable and frank; if he is subject to censure it is only because he was not as forceful in attempting to curb defendant's many extravagances as the average husband is, and he treated her better than she deserved."

The complaint sets out a long series of incidents covering some eight pages describing the conduct of appellant which allegedly caused respondent mental anguish amounting to extreme cruelty. Without attempting to state all the particulars alleged, the following are a few briefly stated incidents which respondent alleges as having been indulged in by appellant since the marriage:

She repeatedly made false and exaggerated statements to respondents and his friends and relatives to the great humiliation and embarrassment of respondent; was grossly extravagant in her expenditures of money and constantly concealed from respondent large accumulations of debts; frequently deceived respondent regarding bank accounts, claims of servants and trades people; constantly subordinated the welfare and best interests of respondent and the minor child to her excessive efforts to make a career for herself; frequently directed servants to keep the child out of the house the greater portion of the day, regardless of cold temperature, so that she would not be disturbed in her musical pursuits; the child suffered from malnutrition and rickets resulting from the peculiar diet insisted upon by appellant; she embarked upon a course of conduct deliberately designed to keep respondent in a constant state of ferment and make him unhappy and miserable; frequently shouted at him; threatened to leave respondent and the child or to commit suicide; informed respondent that she would rather die than to have another child by him; on two occasions she

spit in his face; pursued a practice of making gross charges and derogatory remarks about respondent to his friends and business acquaintances; falsely and fraudulently made a criminal complaint for nonsupport against respondent.

It is not feasible to discuss all the evidence introduced pertaining to the various incidents alleged in the complaint, however, we are satisfied that the evidence submitted by respondent supporting the acts of cruelty charged in the complaint, some of which are summarized herein, is sufficient to show extreme cruelty as grounds for divorce.

Appellant complains that the memorandum decision does not contain a finding that the acts of appellant affected the mental or physical health of respondent. The memorandum decision does not specifically state that appellant's course of conduct affected the mental and physical health of respondent, however, the reasonable inference to be drawn from the language used is that appellant's conduct caused respondent substantial mental suffering. In this connection the record discloses that in response to interrogatories put to respondent concerning the effect, if any, acts of appellant had upon his mental and physical well-being, he testified as follows:

"Q. Mr. Angleton, during this period when this was going on, what was your situation with regard to your job?

"A. I found it very difficult to work and at the same time I did my best because I had the responsibility. * * * I just wasn't able to do the job that I thought ought to be done.

* * * * * *

"Q. What effect, if any, did this condition that existed at home have upon you mentally, or otherwise?

"A. I was always very worried and very concerned, and I think if I hadn't had my religious faith I wouldn't have been able to go through it."

After identifying the first letter he received from appellant during her absence from home and in response to an inquiry as to the effect it had upon him, respondent said:

"I was very pained by it, very discouraged and surprised * * *."

In connection with the second letter he received from appellant he testified as follows:

"Q. When you received the next letter, being Plaintiff's Exhibit No. 1, what effect, if any, did it have upon you?

"A. I had never received a letter which caused me more pain and more disillusionment than that letter. I felt it was completely unjustified and I felt worn out and weary and discouraged

about the fact that she again was telling me, as she had so often before, that we couldn't go on and I felt that things were coming to an end between us."

It is not necessary for a trial court to enumerate the evidentiary facts which caused mental suffering. Extreme cruelty is a term of relative meaning, and a course of conduct that would inflict mental suffering upon one person might not have that effect upon another. The determination of the effects of cruelty is largely committed to the trial court. In De Cloedt v. De Cloedt, 24 Idaho 277, 133 P. 664, this Court said:

"The judge who tries the case and has the parties before him for observation in the light of the evidence is the one to whom the law commits the determination of this question in the first instance, and this court will not disturb a finding that particular acts constitute grievous mental suffering, unless the evidence in support of the finding is so slight as to indicate a want of ordinary good judgment and an abuse of discretion by the trial court."

See also, Riggers v. Riggers, 81 Idaho 570, 374 P.2d 762; Hiltbrand v. Hiltbrand, 68 Idaho 275, 193 P.2d 391.

Error is assigned in granting respondent the custody of the minor child of the parties claiming that such action "is contrary to the evidence". The trial court concluded "the very facts that impel the decision that plaintiff should be granted a divorce are persuasive that, as between the two parties, the father should be awarded custody of the infant child. Visitation rights reasonable as to time and length, however, are allowed defendant." The court further specifically stated that in arriving at such conclusion due consideration had been given the oft repeated rule that "Other things being equal the law favors the mother as custodian of a child of tender years". It is clear, from the language used, the trial court was convinced that respondent is best suited to be the custodian of the child.

Appellant in her brief exhaustively reviews evidence introduced in support of her request for custody and argues that the evidence clearly shows appellant was a fit mother to the child, particularly during the six months period immediately preceding the trial of this action. It is true that the testimony of a number of witnesses called by appellant would support such contention. However, an equal number of witnesses testified regarding appellant's care and treatment of the child during the months and years preceding the six months period referred to and described it as being severe; that she devoted very little time to the child and showed him little kindness or

**198**

affection; that she did not have proper regard for his health and well-being; that her method of discipline was hard. It would serve no useful purpose to detail and elaborate on the substantial and competent evidence of acts and course of conduct on the part of appellant, which if believed by the trial judge, would sustain the conclusion reached by him.

We are not unmindful of the rule that all other considerations being equal a mother will not be deprived of the custody of a child of tender years unless it clearly appears that the welfare of the child demands it. It is apparent that the trial court did not find all other considerations were equal in this case.

Appellant did not in any respect challenge respondent's fitness to have custody of the child, nor was any evidence offered to indicate that respondent was not a devoted and affectionate father to his child.

This Court has many times adhered to the rule that the welfare of the child is the paramount consideration and controlling factor in determining its custody. Jeppson v. Jeppson, 75 Idaho 219, 270 P.2d 437; Thurman v. Thurman, 73 Idaho 122, 245 P.2d 810, 32 A.L.R.2d 996; Brashear v. Brashear, 71 Idaho 158, 228 P.2d 243; Roosma v. Moots, 62 Idaho 450, 112 P.2d 1000; Cornelison v. Cornelison, 53 Idaho 266, 23 P.2d 252.

Under I.C. § 32–705, the disposition of the custody of minor children of divorced parents is essentially committed to the sound legal discretion of the trial court and its judgment will not be disturbed unless such discretion is clearly abused. Moreover the trial court, not this Court on appeal, resolves the conflicting evidence and determines the weight, credibility and inferences to be drawn from such evidence. Gapsch v. Gapsch, 76 Idaho 44, 277 P.2d 278, 54 A.L.R.2d 416; Sellars v. Sellars, 73 Idaho 163, 248 P.2d 1063. That the trial court could have viewed the facts differently, or that we might perhaps have done so, if we had been the initial trier thereof, does not alone entitle us to reverse the case. Under the mandate of Rule 52 I.R.C.P., a reviewing court is to accept the trial court's findings of fact *unless clearly erroneous,* and if conflicting inferences may be drawn from the established facts, it is not within the province of the appellate court to substitute its judgment for that of the trial court. The finding of the trial court on this issue must stand.

On October 13, 1959, appellant filed her motion for an order vacating and setting aside the memorandum decision of Judge Koelsch and granting a new trial. The motion stated six grounds. Under date of March 25, 1960, Judge Durtschi denied said motion for the reason it appeared to the

court that it was without jurisdiction to further entertain the motion since appellant had perfected an appeal from the judgment. This action of the trial court is assigned as error.

This Court has repeatedly held that an appeal from the judgment is a separate and distinct proceeding from an appeal from an order denying a new trial. The two are independent remedies. State ex rel. Rich v. Hansen, 80 Idaho 201, 327 P.2d 366; Idaho Gold Dredging Corp. v. Boise Payette Lbr. Co., 54 Idaho 270, 30 P.2d 1076. This Court has also specifically held that an appeal from a judgment does not divest the trial court of jurisdiction to pass upon and to grant a motion for a new trial which operates to vacate the judgment. Davis v. Rogers, 72 Idaho 33, 236 P.2d 1006; Miller v. Prout, 32 Idaho 728, 187 P. 948. Under respondent's brief it is argued that the trial court correctly reasoned that the 1957 legislature, by amending I.C. § 13–201, intended to effect a legislative adoption of the rule followed in jurisdictions which hold that the remedy of a new trial and appeal are not independent. We find no language in the amendment referred to which would warrant such construction. In Davis v. Rogers, supra, this Court quoted with approval the following:

"Proceedings for a new trial and appeals from judgment are independent remedies. Both remedies may be pursued at the same time or either may be pursued without the other. * * * If on an appeal from a judgment judgment is affirmed, the court still has power, under the statute, to grant a new trial and set aside the judgment even though affirmed on appeal, but, if a judgment should be reversed upon appeal, granting a new trial is of no practical benefit since the reversal of a judgment upon appeal of itself calls for a new trial, unless the appellate court otherwise disposes of the action, and, if the appellate court on appeal should dispose of the action, granting a new trial will not reinstate it."

We therefore conclude that the trial court was in error in refusing to pass upon the motion for a new trial on the ground that the appeal from the judgment divested it of jurisdiction to consider the motion.

The refusal of the trial court to grant appellant separate maintenance and support is assigned as error. Since the memorandum decision directed that "Defendant's cross-claim will be dismissed", it is clear that the court was convinced that appellant is not entitled to any relief thereunder and we cannot say that such conclusion is not justified under the evidence.

Appellant claims error in the ruling made by the trial court relative to the testimony of Father Innocenzo Casati, a

Catholic priest, whose deposition was taken at the request of respondent. Appellant contends that portions of the submitted testimony were in fact privileged communications. I.C. § 9–203(3) provides:

> "A clergyman or priest can not, without the consent of the person making the confession, be examined as to any confession made to him in his professional character in the course of discipline enjoined by the church to which he belongs."

At the time of the conversations referred to appellant was not a member of the Catholic church and the statements mentioned by the witness were made during conversations in the course of friendly meetings. We have examined the testimony complained of and find that it does not relate to any confession made to the witness in the course of discipline enjoined by the church. We therefore conclude that the priest was not an incompetent witness under our privileged communication statute and that the assignment of error is without merit. See In re Koellen's Estate, 162 Kan. 395, 176 P. 2d 544.

We have considered the remaining assignments of error and find they are without merit.

Having concluded that the court erred in refusing to consider appellant's motion for a new trial upon the ground that it did not have jurisdiction, it is necessary that the action be remanded with direction to consider the motion in connection with the undisposed of specified grounds. By this decision all except two of the grounds stated in the motion have been disposed of. The remaining ones are:

> "e. Accident or surprise which ordinary prudence could not have guarded against.

> "f. Newly discovered evidence material to the Defendant which she could not with reasonable diligenge have discovered or produced at the trial."

Since the transcript of the evidence and the entire record will be available, the successor of the trial judge is qualified to pass upon said motion (66 C.J.S. New Trial § 201, p. 484).

The judgment is affirmed and the cause remanded to the district court with instructions to consider and pass upon the remaining specified grounds of the motion for a new trial. Costs to appellant.

SMITH, C. J., and TAYLOR, McQUADE and McFADDEN, JJ., concur.