510 P.2d 483

**L. T. THORSON, Plaintiff-Appellant,**

v.

**Joe STUDER, Defendant-Respondent.**

No. 10963.

Supreme Court of Idaho.

May 23, 1973.

Lawrence H. Duffin, Burley, for plaintiff-appellant.

Roger D. Ling, Rupert, for defendant-respondent.

McFADDEN, Justice.

L. T. Thorson, the plaintiff-appellant, instituted this action to recover $6,638.98, claimed as a loan to defendant-respondent Joe Studer. Defendant, Joe Studer, answered the complaint and counterclaimed for sums allegedly due under a cattle feeding agreement with plaintiff amounting to $6,764.64, for $600 rent on a house rented to the plaintiff, and for $225.00 for a calf of Studer's sold by Thorson. Plaintiff denied the allegations of defendant's counter-claim. This action was tried to the court sitting without a jury.

The trial court entered a memorandum opinion to be considered as findings of fact and conclusions of law. After offsetting various claims of the parties, the trial court entered judgment for $85.14 in favor of plaintiff. From the judgment the plaintiff appealed.

Between January 1968 and August 1969 Thorson and Studer orally agreed to feed and market cattle. Under this arrangement Thorson purchased cattle and left them with Studer to feed. Thorson recorded the weight of the cattle as purchased and delivered to Studer. Upon sale Thorson weighed the cattle and either credited or paid Studer on the basis of weight gain. Studer fed a total of 843 head for Thorson,[1] and 671 were sold in a series of six sales. Both parties agreed that the weight gain by the 671 head of cattle was 163,857 pounds. This amount was calculated by subtracting the total of the weigh-in tickets from the total of the weigh-out tickets. There is no dispute over the fact that the plaintiff advanced or paid defendant the sum of $33,476.80.

Because neither party recorded the gain on each head of cattle, a complete accounting was impossible until the venture terminated. Furthermore, the feeding operation ignored a first-in first-out principle in selling the cattle. When the cattle were ready to market, they were sold regardless of when they were purchased.

During the trial both parties presented irreconcilable evidence on the rate of compensation for feeding the cattle. Thorson,

1. Eleven cattle died during the period, but there is no controversy concerning this. Nor is there any issue presented concerning the sale of one of Studer's calves, this being settled in the final computation.

the plaintiff, stated that the parties agreed to 15¢ per pound of gain on the first 400 cattle. Later, they allegedly raised the rate to 16¢ per pound. On the basis of these rates the plaintiff kept a running account in paying or crediting the defendant for feeding the cattle. In paying the defendant the plaintiff labeled some of the checks as loans. The plaintiff in his brief contends that the defendant was entitled to a credit of $28,629.90, and that the defendant was overpaid by $4,847.10 ($6,332.38, including interest).[2]

The defendant testified that the parties agreed on a different rate of compensation. The defendant contended they agreed to compensate him in accordance with the market price of hay at the time of the sale of the cattle at the following rates:

| Market price of hay | Compensation |
| --- | --- |
| Less than $15.00 per ton | 16¢ per lb of gain |
| $16.00 to $20.00 per ton | 17¢ per lb of gain |
| $20.00 and more per ton | 18¢ per lb of gain |

By employing these rates of compensation at trial the defendant contended that he was entitled to $33,619.49 for feeding the cattle.

The disputed rates of compensation applied to only 671 head of cattle covered by six sales (i. e. 843 cattle delivered minus 671 sold in six sales leaving 172 head). On the remaining cattle Thorson and Studer allegedly agreed to divide the profits equally after deducting the purchase price and the feeding costs.

The trial court found that the alleged rates of compensation concerning the cattle feeding were so conflicting that no conclusion on an agreed rate of compensation could be reached. The trial court found:

"The parties, in fact, never reached agreement on the price to be paid for defendant's feeding; or at least the evidence does not preponderate in favor of any particular agreement."

Suffice it to say, the record fully sustains the trial court's finding in this regard.

After plaintiff rested, the defendant called James J. Bell as his first witness. The defendant qualified Bell as an expert on cattle feeding operations. Bell testified about his prior experience in cattle feeding and present management of a cattle company. He testified that his "company had cattle out on feed to other people." When asked what that type of arrangement was called, the plaintiff objected on the ground that it was immaterial and irrelevant. The trial court ruled:

"Well, it might become relevant if the Court should happen to find these parties never have had a meeting of the mind, I suppose. I will let you proceed on that basis."

Bell's examination continued, and plaintiff interposed a continuing objection to that line of questioning. Bell identified this cattle feeding arrangement as "custom feeding." He testified that reasonable charges for "custom feeding" would be 22¢ per pound of gain during 1969. A similar question was asked Mr. Mabey, another of defendant's witnesses, with the same objection interposed and overruled. Mabey stated that in his opinion 18¢ per each pound of gain was a reasonable charge for feeding during the period from 1963 to 1969.

The trial court by averaging various prices per pound of gain found that 17.16¢ per pound of gain was reasonable compensation to Studer. Using 17.16¢ rate per pound of gain the trial court held that Studer, for feeding the cattle, was entitled to a $32,851.45 credit (191,442 pounds of gain @17.16¢).[3] The trial court also credited Studer $442.73 (for 2,580 pounds of shrink), and $97.48 for his calf. These credits totaled $33,391.66. This amount

---

2. At trial the plaintiff testified to other figures.

3. 191,442 pounds of gain included 163,857 pounds of gain on the 671 head (agreed upon by the parties to be correct) plus 26,585 pounds of gain on the 172 head, some of which were moved to American Falls, and others sold. This latter weight gain is based on defendant's estimate of gain of the 172 head of cattle.

**422**

subtracted from Thorson's "loan" of $33,476.80 left a balance of $85.14 due Thorson. The trial court entered judgment for this balance.

In a motion for new trial the plaintiff alleged, *inter alia,* for the first time prejudice or lack of notice in the trial court's decision to hear evidence on the reasonable value of defendant's services and materials. The plaintiff also alleged that the trial court erred in permitting recovery under quantum meruit. On appeal the plaintiff emphasized these same issues in the fourth and fifth assignments of error. We believe these assignments of error are not properly before the court for three reasons.

■■■ The plaintiff objected only generally alleging immateriality and irrelevancy to the admission of evidence showing the reasonable value of defendant's services and materials. He failed to request from the court an opportunity to investigate or to present evidence in opposition. Under I.R.C.P. 15(b) if a party objects to the admission of evidence because it is not within the issues framed by the pleadings, the objecting party must at that time satisfy the court that the admission of such evidence would prejudice him in maintaining his action. McLean v. City of Spirit Lake, 91 Idaho 779, 430 P.2d 670 (1967). See Naccarato v. Village of Priest River, 68 Idaho 368, 195 P.2d 370 (1948). See, generally, 3 Moore, Federal Practice, sec. 15.-14 (2 ed. 1948). The plaintiff failed to make any showing of prejudice or move for a continuance under I.R.C.P. 15(b). See, Cameron Sales, Inc., v. Klemish, 93 Idaho 451, 463 P.2d 287 (1970). If the objecting party fails to show prejudice to the satisfaction of the trial court, then "he will not be permitted to first raise said question on motion for a new trial or on appeal." Naccarato v. Village of Priest River, supra, 68 Idaho at 374, 195 P.2d at 374 (with citations).

■■■ An examination of the Notice of Appeal shows that this appeal is from the judgment made and entered by the court on June 16, 1971. Nowhere in the Notice of Appeal is mentioned the order denying plaintiff's motion for a new trial and amended findings of fact and conclusions of law. An appeal from an order denying a motion for new trial is a separate and distinct proceeding from an appeal from a judgment. I.C. §§ 13-201, 202. In the absence of an appeal from the order denying the motion for new trial, this Court cannot consider such order and pass upon its correctness. Evans v. Davidson, 57 Idaho 548, 67 P.2d 83 (1937); State v. Hansen, 80 Idaho 201, 327 P.2d 366 (1958); Angleton v. Angleton, 84 Idaho 184, 370 P.2d 788 (1962).

In H. J. McNeel, Inc. v. Canyon County, 76 Idaho 74, 277 P.2d 554 (1954), this Court approved the application of quantum meruit even though only an express contract had been pleaded as the basis of recovery. There was no issue of surprise or prejudice since all the facts were set out in the complaint sufficient to state a cause of action on implied contract. We believe similarly that the facts of this case were fully set out in the counterclaim to warrant the application of quantum meruit. Cf. Sarvis v. Childs Bond & Mtg. Co., 49 Idaho 79, 286 P. 914 (1930). In this case as in *McNeel* we are concerned with the equity of one party expending services and materials for the benefit of another without receiving compensation.

■■■ In this case the defendant alleged an oral agreement between the parties to feed and market cattle in a counterclaim. The defendant alleged that rather than owing the plaintiff money, the plaintiff was in debt to him for feeding the cattle. The defendant, in count one of the counterclaim, alleged three variable rates of compensation for feeding the cattle, the number of cattle fed under the agreement, and the failure of the plaintiff to account for gain realized on the cattle sold. In count two the defendant alleged that the plaintiff owed rent for a home occupied in connection with the cattle feeding agreement. In count three the defendant alleged that the plaintiff sold his calf and refused to pay the defendant for it. There were suf-

ficient facts pled to raise the issue of the value of defendant's services for feeding cattle.

■ During the trial each party presented evidence of alleged rates of compensation for the defendant under the oral agreement. Recognizing that this evidence was hopelessly contradictory the trial court realized and later found that proof of the agreement's essential terms was impossible. For this reason the trial court allowed evidence of reasonable rates of compensation for cattle feeding during the period in question. The trial court's decision to allow such testimony implicitly recognized that the defendant rendered valuable services and materials inuring to the plaintiff's benefit for which the defendant must be compensated. Thus, in this case the admission of testimony establishing reasonable rates of compensation and the use of quantum meruit are consistent with the pleadings and evidence adduced at trial. See, Trollope v. Koerner, 106 Ariz. 10, 470 P.2d 91 (1970); State v. Fireman's Fund Indem. Co., 67 N.M. 360, 355 P.2d 291 (1960); Saak v. Hicks, 321 P.2d 425 (Okl.1958); Gattavara v. Scheumann, 51 Wash.2d 55, 315 P.2d 649 (1957). Cf., I.R.C.P. 15(b).

■ ■ In the sixth assignment of error the plaintiff alleges that the admission of evidence concerning the reasonable value of defendant's services and materials denied him the opportunity to present evidence establishing the value of his services or materials. The plaintiff never raised this issue at trial. In objecting to the admission of the disputed testimony, he made only general objections about relevancy and materiality. He also failed to ask for a continuance to meet the evidence or to show that the admission of such evidence would prejudice him in maintaining his action. See, I.R.C.P. 15(b). Since the plaintiff failed to enter proper objections raising this issue at trial, we cannot consider it on appeal. See, Crosby v. Putnam, 89 Idaho 45, 48, 402 P.2d 389, 391 (1965); Mc-

Lean v. City of Spirit Lake, 91 Idaho 779, 783, 430 P.2d 670, 674 (1967).

■ Plaintiff's remaining assignments of error focus on the trial court's refusal to accept his theory of the case and his evaluation of the record. The trial court was the finder of the facts and the judge of the credibility of the witnesses and the weight of their testimony. Ivie v. Peck, 94 Idaho 625, 495 P.2d 1110 (1971).

■ Plaintiff asserts that the trial court in averaging various rates of compensation to arrive at a reasonable rate of 17.16¢ per pound of grain resorted to a "quotient verdict." This case was tried to a court without a jury. The proscription of quotient verdicts applies to a trial jury and is inapplicable to this case. Here the trial court made its finding of fact of a reasonable rate of compensation. This was fully sustained by the evidence, and we find no error in that regard.

The judgment of the trial court is affirmed. Costs on appeal to respondent.

DONALDSON, C. J., and SHEPARD and McQUADE, JJ., concur.

BAKES, Justice (concurring specially).

I concur in the result reached by the majority solely on the ground that no appeal was taken from the order denying the motion for new trial. Angleton v. Angleton, 84 Idaho 184, 370 P.2d 788 (1962); State v. Hansen, 80 Idaho 201, 327 P.2d 366 (1958). The balance of the majority opinion requires trial attorneys to guess what a trial judge is going to do in a case where the complaint and counterclaim both plead specific, though conflicting, oral contracts.

The defendant, in proceeding with his case in chief, attempted to introduce expert opinion evidence of the reasonable value of the defendant's cattle feeding services rendered to plaintiff. This was the first indication that quantum meruit would have any application in the case. The trial court, in response to an objection that this testimony was irrelevant in view of the ex-

press contract pleaded by the plaintiff and the defendant, stated:

"Well, it might become relevant if the Court should happen to find these parties never have had a meeting of the mind I suppose. I will let you proceed on that basis."

The majority opinion requires the plaintiff to assume that the pleadings are now amended and *quantum meruit* is now an issue in the case as a result of that equivocal statement by the trial court. The majority opinion would require plaintiff's counsel to immediately try and produce expert testimony to present at the trial, or ask for a continuance to present such testimony, even though the trial court has not definitively stated that he intended to apply *quantum meruit* to the case. This places an intolerable burden upon trial attorneys, and but for the failure of appellant to appeal from the denial of the motion for a new trial I would reverse and remand for a new trial on the issue of *quantum meruit* so that plaintiff would have an opportunity to present evidence in support of that theory.