561 P.2d 400

**Joan Marie Bunney POESY,
Plaintiff-Respondent,**

v.

**Glenn Paul BUNNEY,
Defendant-Appellant.**

Nos. 12036, 12354.

Supreme Court of Idaho.

March 17, 1977.

Darrel W. Aherin, Lewiston, for defendant-appellant.

Allen V. Bowles, Moscow, for plaintiff-respondent.

McFADDEN, Chief Justice.

Respondent Joan Marie (Bunney) Poesy was granted a divorce from appellant Glenn Paul Bunney on October 19, 1972. In the decree, Poesy was awarded custody of the four children of the marriage, and Bunney was granted rights of visitation. On April 29, 1974, Bunney sought to modify the decree and obtain custody of the children. That motion was denied on the grounds that there had been no substantial change in circumstances and was not in the best interest of the children. On February 24, 1975, Bunney commenced the present effort to modify the decree. The magistrate court awarded Bunney custody of the two eldest children. Respondent Poesy appealed to the district court. The district court reviewed the record of the magistrate court proceedings and then ordered a trial de novo, sua sponte. That court reversed the magistrate court's decision. Bunney then perfected an appeal of the district court's order in Case No. 12036. During the pendency of that appeal, Poesy sought and was awarded attorney's fees to meet the costs of the appeal. In Case No. 12354, Bunney appeals from the award of attorney's fees.

The two appeals were consolidated by order of this court. The court will first consider the appeal from the district court's reversal of the custody modification, and will secondly address the appeal from the award of attorney's fees.

## I. CASE NO. 12036: CHILD CUSTODY

The two oldest children, Larry and Bonnie, testified that they would prefer to live with their father. At the time of the hearing before the district court on appeal in July, 1975, Larry was age fourteen and Bonnie was age fifteen. The magistrate court, in previously granting the custody modification, had articulated a belief that the children were old enough to have some say in their living situation, and thus attempted to accommodate their desires. On appeal from the magistrate court, the dis-

trict court refused to honor that choice, and awarded continued custody to the mother. Appellant contends that the children's desires should be controlling.

The son, Larry, is the second child of the marriage. He testified that he clearly preferred to live with his father. (Bunney lives on a farm two miles out of Potlatch, and farms for a living. The farm home had been the family home during the marriage. Bunney has never remarried. Poesy remarried in June, 1973 and lives with her new husband and the children in the village of Potlatch.) At one time, he went so far as to run away from his mother's home and went to his father's farm. The testimony is unclear as to how vigorously the father encouraged this, but it is clear he did not discourage it. At one time the father allegedly went to town to pick up the boy and bring him to the farm for an unauthorized visit. When the boy "ran away" the mother filed a complaint under the Youth Rehabilitation Act to bring the boy back (which complaint was later dismissed). The boy was asked at trial why he wanted to live with his father, and answered that he had more things to do on the farm, had more fun there, enjoyed the farm chores, and generally indicated a desire to live on the farm in his father's custody. The daughter, Bonnie, is the oldest child. She testified that she has had some difficulties with her mother, that she likes the country, that she gets along better with her father, and that she desires to live in the old family house in the country with her father and brother.

In *Strain v. Strain,* 95 Idaho 904, 523 P.2d 36 (1974), we noted the standard applied in reviewing a custody decision:

Questions of child custody are within the discretion of the trial court, and it has been repeatedly held that this Court will not attempt to substitute its judgment and discretion for that of the trial court except in cases where the record reflects a clear abuse of discretion by the trial court." *Strain v. Strain,* 95 Idaho 904, 523 P.2d 36 (1974).

We thus review the record to determine whether the refusal to modify custody reflects an abuse of discretion.

The rule governing changes of child custody is well settled and has been stated as follows:

"A divorce decree granting custody of a minor child to one of the parties may not be modified unless there has been a material, permanent and substantial change in conditions and circumstances subsequent to entry of the original decree which would indicate to the court's satisfaction that modification would be for the best interests of the child." *Tomlinson v. Tomlinson,* 93 Idaho 42, 47, 454 P.2d 756, 761 (1969).

In applying this standard, the district court concluded as a matter of law that no change had been shown and thus the requested custody change was denied.

 While the material, permanent and substantial change standard is a sound legal principle, care must be exercised in its application. The tendency is to search for some greatly altered circumstance in an attempt to pinpoint the change called for by the rule. Thus, the emphasis is placed on defining some change, and making that change appear, in itself, to be material, permanent and substantial. This focus is misleading. The important portion of the standard is that which relates the change in conditions to the best interest of the child. The changed circumstance standard was designed, as a matter of policy, to prevent continuous re-litigation of custody matters. That policy goal, however, is of secondary importance when compared to the best interest of the child, which is the controlling consideration in all custody proceedings. *Bryant v. Bryant,* 92 Idaho 76, 78, 437 P.2d 29 (1968); *Patton v. Patton,* 88 Idaho 288, 399 P.2d 262 (1965); *Stratton v. Stratton,* 87 Idaho 118, 391 P.2d 340 (1964); *Larkin v. Larkin,* 85 Idaho 610, 382 P.2d 784 (1963); *Rogich v. Rogich,* 78 Idaho 156, 299 P.2d 91 (1956). The court must look not only for changes of condition or circumstance which are material, permanent and substantial, but also must thoroughly explore the rami-

fications, vis-a-vis the best interest of the child, of *any* change which is evident. What may appear by itself to be a small and insignificant change in circumstances may have significant effects insofar as children are concerned.

■ Care must also be taken to avoid "compartmentalizing" consideration of a child's best interest in successive attempts at custody modification. The best interest of a child, like its growth, is a matter of development. An emerging pattern which is not apparent in a first consideration may come into focus at some later time. The court should allow and consider all evidence relevant to a child's interest, not just that evidence which has emerged since previous orders.

■ In determining a child's custody, it is necessary that findings of fact and conclusions of law as to all relevant issues be made by the trial court and included in the record on appeal. *Clark v. Clark*, 89 Idaho 91, 403 P.2d 570 (1965). Failure to do so is error. *Gish v. Gish*, 72 Idaho 465, 244 P.2d 143 (1952). Here, the court failed to make a finding of fact as to the best interest of the children and the part played by various factors in determining that outcome. The magistrate court initially found that the best interests of the two children mandated paternal custody. However, the findings of fact were amended on motion by the respondent, and the modified findings do not mention the best interests of the children. The district court likewise failed to make a finding as to the best interests of the children. We therefore must remand this cause for proper findings on that issue.

Several factors are relevant to the court's consideration on remand and merit discussion here. Appellant argues that the children's expressed preference should have such weight as to be, in essence, controlling. The magistrate court considered the children's wishes and awarded custody to the appellant. The district court refused to consider the children's wishes and left custody with the respondent. We believe that neither polar approach is proper.

A child's preference should be considered in determining the custody of that child:

"It appears to be the almost universal rule that when a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment as to its future welfare, based upon facts and not mere whims, its wishes are one factor which may be considered by the court in determining custody * * *" Annotation, Custody—Child's Wishes, 4 A.L.R.3d 1396, 1402 (1965) (and numerous cases cited therein).

■ The desire of the child becomes particularly important as the child grows older and more intelligent. With age comes an increased capacity on the part of the child to evaluate his own circumstance and determine what living situation is optimal. Also, with age comes a decreased ability to impose a custody order on a child which is contrary to the desires of the child. As the Oregon Court commented in *Hurner v. Hurner*, 173 Or. 349, 170 P.2d 720 (1946), "It is virtually impossible to compel a fifteen year old boy, against his will, to remain in the custody of his mother * * *."[1] In the time elapsed between the hearing and this appeal, the children have grown two years older. Greater weight must be given even now to the choice of the children than at

1. In its opinion, the magistrate court concluded that the situation posed unreconcilable control problems for the mother:

"The course of conduct initiated by the mother in resorting to the filing of the petition is, actually, a criminal complaint against her son as a runaway, who was attempting to visit his father. This is contributing to a very serious breakdown or impairment of the relationship between the mother and the boy, Larry, and further, an indication to the daughter, Bonnie, what course of action might be expected to an unauthorized visit to the father. This petition to modify the custody of the original divorce action can only result in accelerated hostility between the child and the custodial parent. It appears to the Court that the mother is gradually losing control over the children and must resort to the authorities to aid her in regaining, adversely as it were, the physical custody of the children."

the time of the hearing. This is not to say that the child's choice is decisive. That preference should be considered as "persuasive, although not controlling." *Hurner v. Hurner, supra; Johnston v. Johnston,* 155 Or. 256, 63 P.2d 209 (1936). It must be considered as secondary to the best interest of the child:

> "This court has emphasized that the personal desires of the parent and even the wishes of a minor child, must yield to the paramount consideration of what is best for the child's ultimate good. *Tomlinson v. Tomlinson,* 93 Idaho 42, 46, 454 P.2d 756 (1969); *Larkin v. Larkin,* 85 Idaho 610, 615, 382 P.2d 784 (1963). See also, *Riener v. Riener,* 93 Idaho 900, 477 P.2d 841 (1970); *Saviers v. Saviers,* 92 Idaho 117, 438 P.2d 268 (1968); *Bryant v. Bryant,* 92 Idaho 76, 437 P.2d 29 (1968). See generally Note, Paternal Custody of Minor Children in Idaho, 8 Idaho L.Rev. 345 (1972)." *Mast v. Mast,* 95 Idaho 537, 539, 511 P.2d 819, 821 (1973).

The desires of the child are not considered merely to grant the child's wish, although a court might find that if other factors are equal, the best interest of the child is facilitated by placement in a custodial surrounding which is compatible with its desires. The preference is also relevant because the attitudes which accompany the preference will spill over and affect other elements. Thus the court must weigh the effects of any attempts by the children to see their father, the ability of the parents to cope with the situation, the hostility which would be generated by each custody choice, and all other relevant circumstances.[2]

A significant length of time has elapsed since the filing of this appeal in August of 1975. In the interim, other factors may have arisen. In order to facilitate consideration of *all* relevant evidence, including factors pre-dating the April 1974 hearing and any developments which have become apparent during the pendency of this appeal, a trial de novo is necessary at this time. In the first trial de novo ordered on appeal to the district court, the trial court cut off examination of one witness despite indication from counsel that further questioning was desired. This was erroneous. On retrial, the court should allow both parties to present completely all proper evidence. After considering all relevant factors, the court should determine which custodial solution is in the best interest of the children at that time, and appropriate findings, conclusions of law and order should be made.

## II. CASE NO. 12354: ATTORNEY'S FEES

During the appeal of the custody issue, the respondent moved for an award of attorney's fees incurred in that appeal. The court found that the respondent would be unable to prosecute or defend the appeal without an order for attorney's fees to be paid by the appellant. The parties stipulated that the amount of $750 was reasonable, and that appellant was able to pay that amount. The court awarded the amount to respondent, ostensibly pursuant to I.C. § 32–704.[3] Appellant argues on appeal that the statute is in violation of the Equal Protection clause of the United States Constitution in that it authorizes the award of attorney's fees to needy wives, but not to similarly situated husbands. Respondent contends in response that appellant does not have standing to object to the constitutionality of the statute. We do not reach these issues.

---

**2.** Respondent argues that two older children should not be separated from their two younger siblings, as divided custody is generally thought to be against the best interests of the children. See, e. g., *Peterson v. Peterson,* 77 Idaho 89, 288 P.2d 645 (1955). However, "[i]t is not intended to infer that this is a controlling factor, but that it is one which should be given weight in the ultimate determination of custody." *Brashear v. Brashear,* 71 Idaho 158, 228 P.2d 243 (1951). The advisability of splitting the children should be considered, but only as one factor.

**3.** "32–704. Allowance of support and suit money.—While an action for divorce is pending, the court may, in its discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action."

 It is well established that a reviewing court will not pass on the constitutionality of a statute unless it is absolutely necessary for a determination of the case. See, e. g., *Swenson v. Buildings, Inc.,* 93 Idaho 466, 463 P.2d 932 (1970). It is not necessary that we reach the constitutional issue in this case.

It is also well established that a court may award attorney's fees in a child custody case, notwithstanding the absence of statutory authorization. As this court held in *Dykstra v. Dykstra,* 94 Idaho 797, 498 P.2d 1270 (1972):

> "Defendant-appellant also asserts that the trial court committed error in awarding plaintiff-respondent $250 as and for attorneys' fees in the prosecution of the modification action. As pointed out by appellant, no express statutory authority exists therefor; however, there are manifold cases which have and do grant that authority to the trial court in circumstances such as exist in the case at bar. *Adams v. Adams,* 93 Idaho 113, 456 P.2d 757 (1969); *Embree v. Embree,* 85 Idaho 443, 380 P.2d 216 (1963). The evidence indicates that plaintiff-respondent was and is unable to pay her attorney's fees for the prosecution of the modification action. Appellant asserts in effect that, since the relationship of husband and wife does not exist between the parties, each person should be left to his own resources to pay his own attorney's fees in such an action. However true that might be in a petition for modification of an alimony award, we hold herein that since the care, maintenance and welfare of the minor children is only the issue herein and since their welfare is of paramount importance, *Riener v. Riener,* 93 Idaho 900, 477 P.2d 841 (1970); *Tomlinson v. Tomlinson,* 93 Idaho 42, 454 P.2d 756 (1969), the trial court did not err in awarding plaintiff-respondent her attorney's fees. *See* also: 15 A.L.R.2d 1270."

 Appellate review of the trial court's determination as to the best interests of a child is an important right in any child custody dispute. The purpose of the appeal is not just to test the arguments raised by one parent or the other; the more important purpose is to accomplish complete litigation of the child's best interest. To fully assess this issue, it is critical that both sides be completely explored in the adversary process. Absent special counsel representing the child, the best way to assure that the child's interest is protected is to insure that both parents be allowed to present their cases on appeal. For this reason, attorney's fees must be allowed at the discretion of the trial court whenever one parent to a child custody case, whether husband or wife, is found to be unable to proceed without payment of attorney's fees, and when the other parent is able to pay that amount. It is a specious position to contend that *after* the appeal the winning, but not the losing, parent may be entitled to attorney's fees. For if a parent is unable to proceed without payment of those fees, that person will never be able to reach the point of winning or losing the appeal. To protect the appellate process and its review of the best interests of the child, it is necessary to allow fees to either side unable to proceed without such an order; and this is done in the best interest of the child, notwithstanding the outcome of the appeal. This is not to say that either the husband or the wife, whether appellant or respondent, will always be entitled to fees; rather, each case must be determined on its own merits, with the ultimate goal of allowing both sides to present their case on appeal in order that the best interests of the child may be properly reviewed. The award of attorney's fees was proper and not being based upon the statute, we will not pass upon the statute's constitutionality. We therefore affirm the award of attorney's fees in case no. 12354.

The determination of child custody at issue in case no. 12036 is reversed and remanded for a full trial de novo and a finding of fact as to the best interests of the children. No costs allowed.

DONALDSON and BISTLINE, JJ., concur.

SHEPARD, Justice, concurring in part and dissenting in part.

I concur in the entire opinion of the majority except that portion affirming the award of attorneys' fees on appeal to the mother of the children. I agree with the majority that the award of attorneys' fees could not have been pursuant to I.C. § 32–704 since that statute only authorizes allowances while the action for divorce is pending. Hence, I also agree that appellants' argument as to the unconstitutionality of that statute need not and should not be reached in the instant case.

The majority bases its decision on the attorneys' fees in part on *Dykstra v. Dykstra,* 94 Idaho 797, 498 P.2d 1270 (1972). At issue in *Dykstra* was the inability of the mother of the children to support and maintain them under the child support provisions of the original decree and the mother's petition for increase in such child support allowances. Clearly, the best interest and maintenance of the children were there at issue. In the case at bar the majority has reversed the decision of the lower court on the basis that such court did not give adequate consideration to the wishes of the children for a change of custody to the father. Such is important, the majority tells us, because if other factors are equal, the best interest of the child is facilitated by placement in a custodial surrounding which is compatible with its desires. Hence, I would feel that the actions of the mother in this case cannot be equated with the best interests of the children and therefore attorneys' fees on that theory should not be awarded.

I would further point out that in the case at bar not only have many years passed since the relationship of husband and wife existed between the parties, but the mother of the children has long since found another man to support her. I had always believed the Idaho law to be that debts of a husband or wife contracted during the existence of a marriage relationship constituted community indebtedness. If that be so, the present husband of plaintiff-respondent is in the first instance chargeable for the debt relating to the employment of an attorney. Thus, the Court's holding today relative to attorneys' fees extends the liability of an ex-husband, not only to the debts of an ex-wife, but also to the debts of the ex-wife's present husband.

BAKES, Justice, concurring in part and dissenting in part:

I concur in Part I of the majority opinion. However, as to Part II, I would reverse the award of attorney fees also, and remand that matter to the trial court to be decided after a final decision is made concerning the custody award.