586 P.2d 1042

Mary PICHON, Plaintiff-Appellant,

v.

L. J. BROEKEMEIER, INC., a corporation, Colwell Mortgage Trust, a corporation, Sawtooth Title Co., Inc., a corporation, and Lawyers Title Insurance Corp., a corporation, Defendants-Respondents.

No. 12541.

Supreme Court of Idaho.

Oct. 5, 1978.

Rehearings Denied Dec. 5, 1978.

Stanley D. Crow, Boise, for plaintiff-appellant.

Bruce J. Collier, of Kneeland, Laggis, Korb & Collier, Ketchum, for defendant-respondent Colwell Mortgage Trust.

James L. Kennedy, Jr., and R. Michael Redman, of Walker & Kennedy, Twin Falls, for defendant-respondent L. J. Broekemeier, Inc.

William J. Langley, Twin Falls, for defendants-respondents Sawtooth Title Co., Inc. and Lawyers Title Insurance Corp.

SHEPARD, Chief Justice.

Prior to oral argument respondents filed a motion to dismiss the instant appeal on the contention that the orders for which review is sought are nonappealable. Decision thereon was reserved. For the reasons that follow, the appeal is dismissed.

Plaintiff-appellant Pichon was a vendor of land in Ketchum, Idaho. L. J. Broekemeier, Inc., defendant-respondent, was the vendee. Broekemeier intended to build condominium units on the subject land. Colwell Mortgage Trust, also a defendant-respondent, assisted Broekemeier with financing for this venture. Sawtooth Title Co., another defendant-respondent, insured the title and acted as escrow agent for the vendor and vendee. Lawyers Title Insurance Corp., still another defendant-respondent, authorized Sawtooth to act as its agent to write title insurance in Blaine County. Under the contract of sale, Pichon agreed to convey 1½ acres of the 3 acre tract when Broekemeier had paid approximately one-half the total purchase price. At the plaintiff's election she could take part of the purchase price in the form of three units within the proposed project. She exercised that option and took possession of the three units but has never received title to those units.

Colwell Mortgage Trust desired greater security from Broekemeier for its investment. To assist Broekemeier, Pichon executed a warranty deed to Broekemeier covering approximately the 1½ acres of the tract on which the corporation was building the condominium units. Pichon also executed a "consent to encumber" to the entire

property, subject to her interest therein. This allowed Colwell to take a deed of trust on the property from Broekemeier. According to Pichon, she was told by Mr. Broekemeier, an officer of L. J. Broekemeier, Inc., that the consent to encumber would be recorded but that the warranty deed would not be recorded but would be held by the escrow agent. She contends that she did not let Mr. Broekemeier take the warranty deed with the understanding that it would be recorded. In fact the deed was recorded and respondents contend that "delivery" of the deed is presumed both from recordation and Mr. Broekemeier's possession of the instrument. Sawtooth, according to the appellant, breached its escrow duty by recording the warranty deed in favor of Broekemeier when the purchase price therefor had not yet been paid.

Broekemeier subsequently defaulted on its obligations to Colwell Mortgage Trust. Colwell then foreclosed on the deed of trust executed in its favor by Broekemeier. In addition, Broekemeier has not completed making the payments called for under its contract with Pichon. Pichon has demanded and Colwell Mortgage Trust has refused to convey title to the three condominium units which appellant claims under her contract with Broekemeier.

In her complaint Pichon set out four "counts" against the four defendants. In Count I the appellant sought to quiet title to the 1½ acres covered by the warranty deed to herself. On an order of partial summary judgment, the trial court dismissed appellant's claim for quiet title and instead quieted title in Colwell Mortgage Trust. In so ruling, the trial court determined that the appellant had "delivered" the above mentioned warranty deed for purposes of passing title. Although the trial court's dismissal of Pichon's Count I does not expressly state, we assume that this Count was dismissed as to all four defendants as neither the two title companies nor Broekemeier assert any claim of right or title against Pichon in the property covered by the quiet title claim. Appellant characterizes Count II as "intentional interference with economic relations;" Count III as "ac-

tion to vacate the foreclosure;" and Count IV as "recovery of unpaid contract price"— damages for breach of contract. Partial summary judgment was entered in favor of respondent Lawyers Title on Counts II, III and IV. As stated by appellant, "Pichon does not contend, on this appeal, that summary judgment in favor of Lawyers was in error as to Count III and Count IV." Partial summary judgment was entered in favor of respondent Sawtooth Title Co. on Count II. Partial summary judgment was also entered in favor of respondent Broekemeier on Counts I, III and IV, except to the extent that Count IV seeks damages for breach of contract.

With regard to each of the foregoing orders of partial summary judgment, except as to respondent Sawtooth Title Co., the trial court made findings pursuant to Rule 54(b), "that there is no just reason for delay in the entry of judgment . . . and its entry as a final judgment is hereby directed." The trial court's orders of partial summary judgment do not comply with Rule 56(d) in that there is no statement of what facts were found to be without genuine controversy and what facts remain to be determined at trial. We note, however, that the trial court's finding that Pichon had "delivered" the deed to Mr. Broekemeier with regard to appellant's quiet title claim appears to be contradicted by the trial court's other ruling that Pichon in Count IV for damages can raise the issue of whether Broekemeier had tricked the deed out of her. On the record before us we cannot tell how the apparent contradiction is to resolve itself, but in view of our determination of the case it is unnecessary for us to reach the question.

■ Pichon has appealed the trial court's order of partial summary judgment in favor of Sawtooth Title Co. Since no Rule 54(b) certification was made in respect to that order, the order is nonappealable and the appeal thereon is dismissed. *Athletic Round Table, Inc. v. Merrill*, 98 Idaho 852, 574 P.2d 540 (1978).

■ Counts II, III and IV were dismissed against respondent Lawyers Title Insurance Co. In addition, it appears, and for the purpose of this appeal we assume, that Count I was also dismissed against Lawyers Title. Thus, the trial court disposed of all the appellant's claim against Lawyers Title and all such orders were accompanied by Rule 54(b) certifications. Idaho's version of Rule 54(b)[1] was different from the corresponding federal Rule 54(b)[2]. Idaho's rule permitted certification only when there was more than one claim for relief and one or more but less than all of those claims were disposed of against all parties against whom those claims were made. The federal rule permits certification in the same situation as well as in the situation where there are multiple parties and all claims against one or more but less than all parties are disposed of. Were the federal rule applicable to this case, certification as to the disposition of appellant's claims against Lawyers Title might have been possible on the latter contingency provided for in the federal rules.[3] As a result of certification affecting Lawyers Title under Idaho's rules must be considered on a claim-by-claim basis. The district court's orders of partial summary judgment in this case left some aspect of claims II, III and IV outstanding against one or more defendants. Under our version of Rule 54(b), then, there was no proper basis for certifying dispositions of those claims against Lawyers Title. The district court was without power to certify those dispositions as final, appealable orders. The same may be said of the district court's dispositions of Claims III and IV against Broekemeier. Appeals from dispositions of these claims are unauthorized under I.R. C.P. 54(b) and appeals from these dispositions are accordingly dismissed. *See South-land Produce Co. v. Belson*, 96 Idaho 776, 536 P.2d 1126 (1975).

■ The only claim which the trial court's orders arguably disposed of in whole was Count I. We will treat the Rule 54(b) certification made by the trial court in reference thereto as applying to all four defendants. The trial court ordered that a final judgment be entered on Count I with the express determination that there was no just reason for delay in such entry. "In the absence of circumstances not presented here . . . an action may be appealed only upon an express determination by the trial court that there is no just reason for delay." *John Deere Co. v. Kunzler*, 97 Idaho 921, 557 P.2d 199 (1976). The trial court's determination that there is no just reason for delay is not, however, binding on the appellate court when it appears

1. Judgment upon multiple claims.—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of the judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims. If any parties to an action are entitled to judgments against each other such as on a claim and counterclaim, or upon cross-claims, such judgments shall be offset against each other and a single judgment for the difference between the entitlements shall be entered in favor of the party entitled to the larger judgment.

2. Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

3. See change in the Idaho rule effective July 1, 1978.

the lower court abused its discretion in so finding. *Baca Land & Cattle Co. v. New Mexico Timber, Inc.,* 384 F.2d 701 (10th Cir. 1967).

■ Idaho's Rule 54(b) is patterned after the federal rule as it was amended in 1946. *Southland Produce Co. v. Belson, supra.* The Committee Note accompanying the federal amendment noted that the purpose of allowing appeals from partial dispositions of a whole case was "to avoid the possible injustice of a delay in judgment of a distinctly separate claim." The Committee added that a Rule 54(b) certification would be improper where a trial remained to be had "on other claims similar or identical with those disposed of." 6 Moore's Federal Practice ¶ 54.01[6] at 52.54. That is precisely the situation which exists in this case. Although the trial court determined Pichon had delivered the deed to Broekemeier in denying Pichon's request for a decree of quiet title and as a basis for granting quiet title to respondent Colwell Mortgage Trust, the trial court left open the question of whether there had been delivery for purposes of appellant's damage claim against Broekemeier on Count IV.

■ The Committee Note accompanying the 1946 amendment of the federal rule stated that partial dispositions should be certified as final only "in the infrequent harsh case" in order to avoid an injustice which might result if an appeal were delayed until final disposition of the entire case. Except where an injustice would result from denial of an immediate appeal, Rule 54(b) was not intended to abrogate the general rule against piecemeal appeals. The proper standard for determining whether to make Rule 54(b) certifications was stated by the late Judge Hastie of the Third Circuit. He said:

> [O]rdinarily an application for a Rule 54(b) order requires the trial judge to exercise considered discretion, weighing the overall policy against piecemeal appeals against whatever exigencies the case at hand may present. Indeed, the draftsmen of this Rule have made explicit their thought that it would serve only to

authorize "the exercise of a discretionary power to afford a remedy in the infrequent harsh case . . . ." 28 U.S. C.A., Federal Rules of Civil Procedure 118–119 note. It follows that 54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel. The power which the Rule confers upon the trial judge should be used only "in the infrequent harsh case" as an instrument for the improved administration of justice and the more satisfactory disposition of litigation in the light of the public policy indicated by statute and rule.

*Panichella v. Pennsylvania R.R.,* 252 F.2d 452, 455 (3d Cir. 1958). The record in the present case does not justify certification on the basis of the considerations mentioned above. The record does not reflect any hardship or injustice that would be suffered if a Rule 54(b) certification were not made. To the contrary, it appears the orders of partial summary judgment from which this appeal is taken were entered so that the trial court could streamline the case by eliminating the equitable claims so that the remaining legal claims could be tried to a jury. The trial court's orders therefore resemble pretrial orders pursuant to Rule 16. *State ex rel. Moore v. Bastian,* 98 Idaho 888, 575 P.2d 486 (1978). Such orders are not susceptible of Rule 54(b) certification. *Baca Land & Cattle Co. v. New Mexico Timber, Inc., supra.* Appellate review of these orders ought properly to await final determination of the entire case if the parties then feel an appeal is appropriate. The trial court abused its discretion in entering Rule 54(b) certifications as to the dismissals of Count I. The orders of partial summary judgment on Count I are not appealable as a result.

The appeal is dismissed.

McFADDEN and DONALDSON, JJ., concur.

BAKES, Justice, concurring in the result:

I concur in the dismissal of this appeal. I write, however, to point out that the appealability of the orders entered by the trial

court in this area is determined not by Rule 11 of the Idaho Appellate Rules, which was promulgated after the partial summary judgments in question were entered, but by the predecessor to Rule 11 which was I.C. § 13–201. Whether or not this Court will continue to follow the rule espoused in the majority opinion in which this Court will review independently the efficacy of a district court certification of appealability pursuant to Rule 54(b), I.R.C.P., is still an open question when applying Rule 11(a)(2) of the Idaho Appellate Rules.

BISTLINE, Justice, concurring specially.

I concur in the dismissal of this appeal, but reluctantly. I do not see that the posture of the case presents a question of appealability arising out of the scope of Rule 54(b). If Rule 54(b) did control the question of appealability, I would be unable to agree with the Court's *sua sponte* decision to overthrow the district court's certification of appealability, especially where it is a totally new conceptual approach to Rule 54(b) which has not been briefed or argued by the parties. There is a question of appealability, separate and apart from Rule 54(b). Briefly, I will endeavor to set out my reasoning, and the authority which supports my conclusions. Pichon, in her brief, states well the central issue raised by the appeal: that it "arises from the decision of the District Court *to deny any equitable remedies to Pichon* and allow her to proceed only on her claim for damages." Such is exactly what happened; and from my review of the record, I am of the opinion that a review of that determination of law should be made, but as being one within the spirit and intent of Rule 12.

The defendants obtained that decision from the district court on a series of motions for partial summary judgment. In a letter decision the court *ruled* on the various motions, but it was not, nor was it intended to be, a memorandum opinion, which would have been better. As pointed out by Chief Justice Shepard, an order granting a partial summary should, in the language of Rule 56(d) be based upon a determination of "what material facts exist without substantial controversy," and *the order shall state* "the facts that appear without substantial controversy." The letter decision does neither, and this Court can only determine the undisputed facts by going to the record, which is largely depositions and exhibits, or accept the facts as stated by the parties in their briefs.

The district court's letter decision has been amplified, however, by remarks of the court at a hearing conducted on motions for reconsideration, which followed after the letter decision was sent out and before the formal orders were entered granting the summary judgment. During the course of that hearing the district court stated:

> Gentlemen, what I want to see and I think the case should be in this posture, is that Mrs. Pichon can go to a jury and the jury can determine whether or not in effect those deeds and documents were fraudulently procured from her and whether or not she suffered any damages. . . . I have attempted by my decision in this case to place this matter in a posture to be tried to a jury on the question of the alleged fraudulent procurement, actually of the deeds and other documents. It seems to me that when those deeds were recorded, and mortgages filed, we are effecting, seriously effecting the record, third persons, purchasers of those condominiums, that the recording of a deed certainly as to bona fide purchasers are sufficient and I think it leads us into a legal maize [from] which we could never extract ourselves.

> .    .    .    .    .

> No, it's a question—it's a question as to whether or not she has been damaged by a fraudulent procurement of those papers. And that is to be submitted to the jury. Now, I think included within that is the intent to deliver but not in the connotation that you are putting it. What you are saying is if there was [not] any intent to deliver, there was never any legal transaction at all.

> .    .    .    .    .

She demanded a jury trial in this case. She wants a jury trial. She pled an equity situation and a legal situation. *As I understand the law I have the right to take this away from a jury because she has pleaded on equity and pleaded it also in law.* I have ruled that she does not have those equitable remedies, that she in effect has adequate remedy of law is in effect of what I said *and certainly she has raised the question of fact as to whether or not these deeds were someway tricked out of her.*

.   .   .   .   .

I am trying to separate this so you can go to the Supreme Court on these equitable issues and we can go to the jury on the legal issues.

In my opinion the failing in the opinion authored by the Chief Justice is his unquestioning acceptance of the grounds that this is a *multiple claims* situation, as contemplated by the provisions for certification under Rule 54(b), from which point he proceeds to hold that this Court is not bound to accept the certification made by the district court. The Court plows new ground. Until this particular case came before the Court, to obtain an appellate resolution going to the merits of the controlling question decided below, a number of cases have been dismissed for lack of the requisite certification, many of which were entered on the Court's own motion. Today the Court goes one step further and dismisses because the certification should not have been issued. Here the parties and the trial court all clearly perceived that a trial decision was being made, and that it would be appealed; none of the respondents have moved to dismiss on the grounds of non-appealability, and much labor and expense and loss of time had occurred while the parties presented argument and authority going to the

merits of the question the resolution of which they feel is essential before proceeding further below. The Chief Justice, citing the *Panichella* case, takes the position that "the record does not reflect any hardship or injustice what would be suffered if a Rule 54(b) certification was not made." So far as I know this Court has not heretofore screened an appellate record to ascertain whether certification was justified. There is no provision in the Rules of Civil Procedure which has heretofore declared that power in this Court; I think that this is not the set of facts and circumstances calling for such a new rule by case law. In *Panichella*, which is an extreme case, Panichella sued the railroad only, who in turn brought in Warner Brothers Pictures, Inc., as a third-party defendant. The United States District Court certified as appealable the summary judgment decision that a release given by Panichella to Warner Brothers was a defense to the railroad's claim against Warner Brothers for contribution and as primary tort-feasor.

While I am not inclined to debate the policy decision articulated in *Panichella*, I cannot at all see its applicability to this case [1] and believe that this Court's adoption of the philosophy there expressed should be better left to another day and another case. Here we see a plaintiff, four defendants, and a trial court all of a mind that an appeal of the district court's ruling was important enough for certification as appealable. Being unable to see, as between the parties, any significant distinction in the legal effect of the release deed being fraudulently obtained, or only conditionally delivered and the condition not met, it seems patently in error for the trial court to have ruled that Pichon could not proceed to seek the equitable relief of quieting title to her property, or foreclosing the contract,

---

1. No difficulty should be encountered here in accepting Pichon's appeal on the "infrequent harsh case" criteria of *Panichella*. Having sold her property 6 years ago for $214,000.00, she has not received payments according to the contract, and the entire parcel became encumbered to CMT, which corporation has not released any part of it, nor recognized her claim to the three condominium units or $64,000.00—notwithstanding that CMT appears to have also taken on the obligation and rights of the Pichon-Broekemeier contract. Her asset, if it is hers, is a state of limbo, and she has received a trial court decision restricting her to "damages."

without first trying out the issue of delivery, and determining its effect on the contract relationship. I say that, guardedly, however, and only for the purpose of presenting my views on appealability, because the Court as a whole has declined to and has not discussed the merits of the case, and appropriately I go no further.

My concurrence in dismissal is occasioned not by reason of an improvident Rule 54(b) certification, but rather because this simply is not a multiple claim situation. Pichon pleaded, and only purported to plead, a single claim for relief, which in her second amended complaint is styled as her "cause of action." Her claim for relief is based upon her real estate contract with Broekemeier, and she would like to get the balance due her thereunder, or the property back. In the event that the actions of the various defendants have precluded such relief, she alternatively wants the relief of damages against those found to be responsible.

Pichon states her claim for relief in four counts. Count I encompasses paragraphs I through XX, wherein she asserts the contract, the fraudulent procurement of the deed of August 14, 1973, that it is void for lack of delivery, that she has been deprived of all of the real property described in the deed of trust, that the condominium units she selected have not been conveyed to her, that the withholding of the "Consent of Encumber" from recording and the recording of the warranty deed were pursuant to a common plan intended to deprive her of her property, and that title to the entire real property described in the Pichon-Broekemeier contract should be quieted in Pichon, subject to any obligation to convey to Broekemeier upon performance of Broekemeier's obligations under the contract of sale.

Count II is stated by repleading all of paragraphs I through XVII of Count I, and adds XVII and XIX, and amounts to an allegation that the recording of the warranty deed, withholding of the consent to encumber from record, and recording the deed of trust constituted slander of Pichon's title

of the real property and damaged Pichon in the amount of the unpaid balance on the Pichon-Broekemeier contract, for which Pichon asked recovery against Broekemeier, Colwell, Sawtooth and Lawyers on a theory of joint and several liability.

Count III is stated by repleading paragraphs I through XVII of Count I and adding XVIII and XIX, which asks for an order setting aside the foreclosure sale of the property.

Count IV is stated by repleading paragraphs I through VI of the first count, and adding VII and VIII—to allege defaults by Broekemeier in failing to make payments required by his contract with Pichon, and seeking recovery of the unpaid amounts.

While each count may set forth a different legal theory, and while it might be said that to some extent they are repetitious of each other, it is abundantly clear that each count is based on the same transaction, *i. e.,* Pichon's contract with Broekemeier and the ensuing release of the one and one-half acres by warranty deed and the execution of the consent to encumber which, in turn, involved CMT, Sawtooth Title, and Lawyer's Title. It must be remembered that the underlying contract provided for a release and also dealt with Broekemeier's right to encumber. Taken all together, as was said in *Baca Land & Cattle Co. v. New Mexico Timber, Inc.,* 384 F.2d 701, 702 (10th Cir. 1967), it is inescapable that each theory arises out of the same transaction or occurrence; there is but one claim, and Rule 54(b) does not apply. The trial court cannot by certificate make final and appealable a ruling which is not final and appealable. Essentially, what the district court did here was make a ruling that he would restrict Pichon's remedies as stated above. So viewed, that ruling is not unlike the *in limine* determination held unappealable in *Twin Falls County v. Knievel,* 98 Idaho 321, 563 P.2d 45 (1977), wherein it was held that the county had but a single claim for relief against multiple party defendants. As was stated in *CMAX, Inc. v. Drewry Photocolor Corp.,* 295 F.2d 695, 697 (9th Cir. 1961), "The word 'claim' in Rule 54(b) refers to a

set of facts giving rise to legal rights in the claimant, not to legal theories of recovery based upon those facts."

Here, were we to allow the appeal as proper under Rule 54(b), we could very well be passing upon the question of the conditional delivery of the deed, or fraudulent procurement thereof, and its effect upon Pichon's right to the remedies provided by her contract, with the district court at the same time submitting the same issue to a jury. In *CMAX* the circuit court observed that such simultaneous passing upon what is in substance the identical claim, dealing in the appellate court with one legal theory, and in the trial court on yet another, but in both courts on basically the same facts, would not be good judicial administration.

In view of the extreme amount of time and money expended by the parties in their presentation on the merits, it seems reasonable that they should be extended the opportunity of seeking certification under appellate rule 12 before the appeal is dismissed. The district court's ruling being not final, it is of course subject to rescission or change should the court conclude that the issue of conditional delivery of the deed, or delivery procured by fraud, should be submitted to an advisory jury[2] and that perhaps other factual issues determined before the district court reaches a final decision as to what remedy, if any, Pichon should have.

---

**2.** In my view, Pichon's action arises out of a contract of sale with Broekemeier, the assignment of Broekemeier's interest in that contract to CMT, the release of one and one-half acres as per the contract, the consent to encumber the contract property, the default in making payment, and Pichon's present effort to obtain the remedies of the contract, which to my understanding are *equitable*. While a demand for jury trial has been made, according to remarks of the trial judge, such a demand would not ordinarily require jury resolution of issues which are essentially equitable. Pichon's claim for "damages," as distinguished from her claim to the return of the property or the monies promised her by the contract, is only an alternative remedy being sought in the event that the defendants, or some of them, by their conduct have wrongfully placed her in a position where she cannot enforce her contractual remedies.