627 P.2d 799

**Lynnae Denise MOYE, Plaintiff-Counter-defendant & Appellant,**

v.

**Terry Andrew MOYE, Defendant-Counterplaintiff & Respondent.**

**No. 13194.**

Supreme Court of Idaho.

April 28, 1981.

---

Larry C. Hunter, of Moffatt, Thomas, Barrett & Blanton, Boise, for appellant.

James R. Baugh, Boise, amicus curiae by Co-Ad, Inc., Idaho Coalition of Advocates for the Disabled.

Mike Wetherell, Boise, amicus curiae by Idaho, Idaho Epilepsy League.

R. Brad Masingill, of Ryan & Sweet, Weiser, for respondent.

DONALDSON, Justice.

Appellant Lynnae Denise Moye and respondent Terry Andrew Moye were married December 28, 1974. Two children were born of this marriage, a girl, now 4½ years old, and a boy, now 2½ years old. The parties separated on October 16, 1978 and on the following October 20, the appellant-mother filed for divorce. Pending the outcome of the divorce proceeding, the mother retained custody of the children under a temporary award made by a lawyer-magistrate.

The divorce proceeding was bifurcated for purposes of trying the custody issue first. Subsequently, the district court, Judge Gilbert C. Norris presiding, granted custody of the children to the respondent-father. The mother immediately appealed the Norris order, but because of the bifurcated nature of the proceedings, which presented problems of finality for purposes of review, this Court on March 2, 1979, remanded the case to the district court for further proceedings.

On April 4, 1979, Judge Norris, citing a personal bias developed because of the publicity of the case, withdrew and submitted the matter for reassignment. Subsequently, Judge Edward J. Lodge assumed jurisdiction of the case. On June 15, 1979, Judge Lodge filed a final decree of divorce which in addition to resolving all other issues at dispute, ordered: "That custody of the minor children is left contingent upon a final decision by the Supreme Court to the State of Idaho, subject to the stipulation to divide custody pending appeal."

Thus, the present posture of the case as it has filtered to this appellate level appears as follows. The Norris order is, at best, an interlocutory order of custody. The Lodge decree is a final judgment which, pursuant to I.A.R. 17(e), incorporates for purposes of appeal the Norris order. Accordingly, review of the Lodge decree, received by this Court for purposes of appeal pursuant to our order of September 17, 1979, necessitates review of the Norris order.

The standard of review is well established:

"Questions of child custody are within the discretion of the trial court, and it has been repeatedly held that this Court will not attempt to substitute its judgment and discretion for that of the trial court except in cases where the record reflects a clear abuse of discretion by the trial court."

*Strain v. Strain*, 95 Idaho 904, 905, 523 P.2d 36, 37 (1974); *quoted in Posey v. Bunney*, 98 Idaho 258, 261, 561 P.2d 400, 403 (1977). *Accord Blakely v. Blakely*, 100 Idaho 107, 594 P.2d 145 (1979); *Koester v. Koester*, 99 Idaho 654, 586 P.2d 1370 (1978). *Saviers v. Saviers*, 92 Idaho 117, 438 P.2d 268 (1968). *See* I.C. § 32–705.

In the instant action, the appellant-mother's basic contention is that Judge Norris abused his discretion in granting custody to the father because the judge based his order primarily upon the fact that appellant suffers from epilepsy. She also argues that pursuant to the Tender Years Doctrine, she should have received custody.

Upon review, we do not find that the Norris order is in error simply because the mother's physical ailment was a consideration in the judge's formulation of the custody grant. The rule in Idaho is that in determining the custody of a minor child, the child's welfare and best interest is of paramount importance. This rule is substantiated by case law, *Blakely v. Blakely, supra, Hawkins v. Hawkins*, 99 Idaho 785,

589 P.2d 532 (1978), *Koester v. Koester, supra, Cope v. Cope*, 98 Idaho 920, 576 P.2d 201 (1978); *Posey v. Bunney, supra, Strain v. Strain, supra, Adams v. Adams*, 93 Idaho 113, 456 P.2d 757 (1969).[1] It follows that the physical condition of a parent is a valid consideration in a "best interests" approach. Accordingly, such a consideration made by a court does not in itself present an incident of error.

■ Whether there has been abuse of discretion in the custody grant, however, is a matter of inquiry which goes beyond merely looking at a court's consideration of a parent's physical health. An abuse of discretion by the trial court occurs when the evidence is insufficient to support its conclusion that the welfare and interests of a child will be best served by a particular custody award. *Hawkins v. Hawkins, supra; Koester v. Koester, supra; Cope v. Cope, supra; Prescott v. Prescott*, 97 Idaho 257, 542 P.2d 1176 (1975); I.R.C.P. 52(a). It follows that an abuse of discretion may also occur where the court overemphasizes one factor, such as a parent's physical condition, thereby similarly failing to support its conclusion that the welfare and interests of a child will be best served by a particular custody award. In the instant case, we find this latter abuse of discretion.

■ Specifically, the evidence presented and so found by the trial court, that the appellant-mother suffers from epilepsy which is controlled to a degree through medication, that she requires nine to ten hours of sleep per night, that she has migraine headaches and that she has post-seizure lack of energy, does not, under the circumstances as they appear on the record, sufficiently support the court's conclusion that it is the best interest of the children to vest custody in the respondent-father. The court did make some findings as regards the status of the respondent-father but the court's apparent overemphasis of but one consideration, that being the mother's physical condition, convinces this Court that all other relevant factors impacting upon the best interests of the children were not duly considered or, if they were, it was not so reflected upon the record.[2] We therefore reverse the Norris order and remand to the district court for further proceedings. Pending resolution of the custody issue by the district court, the Lodge decree granting joint custody pursuant to stipulation shall remain in effect except for that portion of the decree requiring that an adult female be with appellant during visitation times, a burden we find to have been imposed without any substantial evidence to support it. We observe further that the Tender Years Doctrine, that custody of a child of tender years should be vested in the mother, has limited impact in Idaho law. To the extent previous case law exists which suggests a preference for the mother as custodian of a child of tender years, the preference exists only when all other considerations are equal. *Prescott v. Prescott, supra.* As we have previously held, the considerations made by the trial court are

1. It is interesting to note that the legislature has now statutorily recognized the best interest rule in I.C. § 32-717 (Supp.1980):

    "Custody of children—Best interest.—In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children. The court shall consider all relevant factors which may include:

    1. The wishes of the child's parent or parents as to his or her custody;

    2. The wishes of the child as to his or her custodian;

    3. The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;

    4. The child's adjustment to his or her home, school, and community;

    5. The mental and physical health and integrity of all individuals involved; and

    6. The need to promote continuity and stability in the life of the child."

2. The Norris order contained ten findings of fact. Six of those findings deal with the mother's physical health. One other finding is that each of the parties loves the children. Only the remaining three concern the status of the father and one, finding number eight, contains what we consider to be irrelevant comments by the court concerning the father's attitude towards dry diapers.

incomplete and the preference is therefore inapplicable.

Reversed and remanded. Costs to appellant. No attorney fees awarded.

McFADDEN, BISTLINE and SHEPARD, JJ., concur.

BAKES, Chief Justice, dissenting:

I respectfully dissent, well aware of the need to remove the burdensome social stigma which has so undeservedly attached itself to epilepsy and epileptics, a stigma founded solely on fear and ignorance. It is my sincere belief, however, that this case is not the appropriate vehicle to rectify those historical inequities.

One point cannot be overstressed: no one has taken Lynnae Moye's children from her because she is an epileptic. Nothing could be farther from the truth. When a district judge awards custody to one of the parents in a divorce case, it is not necessarily because the other parent is not fit. In the ordinary custody case, both parents are loving, capable and determined to raise their children in a proper manner. That does not help the judge who, with the best interests of the child at heart, must pick and probe and scrutinize often petty testimony in an effort to find some articulable difference which will support a painful and difficult choice. When the judge makes that choice, he or she is not taking the children away from the non-custodial parent, nor is that parent found to be unfit. The judge is merely awarding custody to one parent according to the best interests of the child as he views it. This difficult choice is necessitated by the parents' divorce, not by their shortcomings as parents.

Epileptics can and do make excellent parents. As the majority notes, however, a parent's physical health, and therefore epilepsy, is certainly a factor which the trial court can consider in a custody case. This the lower court did. It committed no error in this respect.

Our task on appeal is to determine whether the district court's determination, dictated by the best interests of the children, is supported by the evidence and within the proper bounds of discretion. The lower court in this case properly considered other factors besides the wife's epilepsy. The testimony of several relatives and acquaintances strongly indicated that the father was the more attentive parent and that he extended significantly greater efforts in feeding and caring for the children. This is reflected in the trial court's findings.

"VIII

"That defendant is able-bodied and has no apparent moral, physical or mental disabilities, and has demonstrated his ability to look after said children, demonstrating almost a too-zealous attitude about having dry diapers, but the Court considers such zeal is far superior to what the situation would be if he were indifferent to wet diapers.

"IX

"That defendant has since the birth of said children personally looked after, cared for and fed said children most of the time when he has been home, and when not home has seen to it that some other responsible person stays with plaintiff most of the time to insure said children are adequately cared for."

The majority dismisses Finding VIII as "irrelevant comments," but in the context of this controversy, Finding VIII manifests the trial court's belief that the father was the more attentive parent. Wet diapers may seem trivial to some members of this Court, but it was certainly one of the many factors which the trial court was entitled to consider. Apparently, one of the Moye children had persistent diaper rash which was exacerbated by wet diapers. The parties apparently felt it was an important problem because they both devoted considerable attention to the diaper issue during the trial. However insignificant it may seem to this Court on appeal, the father's zealous attitude toward dry diapers reflects what the record shows in many other respects was his great concern for the wellbeing of his infant daughter.

The court's final finding reads as follows:

**174**

"X

"That defendant has sufficient income to support and educate said children adequately, and has the ability to provide adequate baby-sitting facilities for the children during the hours he is working."

The phrase "adequate baby-sitting facilities" is perhaps an understatement, since the father had arranged to have his sister-in-law, a licensed practical nurse, take care of the children while he was at work.

There is, on the other hand, not a single finding which in any way indicates it would be in the children's better interest to have custody vested in the appellant. The lack of findings in that regard is supported by a corresponding lack of evidence in the record.

I fear, against hope, that today's opinion will make it very difficult for a parent whose spouse is an epileptic to obtain custody of his or her children, their best interests notwithstanding. While I can understand the majority's desire to rectify an unfounded historical stigmatization, I see no need to reverse a district court's custody order well supported by the record, quite apart from the epilepsy issue. I cannot help but wonder whether today's result would be different had this case not been inaccurately cast as a single-issued *cause celebre.* I would affirm.

It is appropriate to add a final note about an appealability issue ignored by the majority. On January 6, 1979, the plaintiff Lynnae Moye filed her notice of appeal from the district court's custody order. A final decree of divorce had not yet been entered. Thereafter, she requested this Court to enter an order staying execution of the custody order. On March 2, 1979, this Court remanded the case to the district court to consider the motion for stay pending appeal. In that order, this Court observed that "the order appealed from herein may be a non-appealable interlocutory order since there is no Rule 54(b) I.R.C.P. certification, nor any certification to Rule 12,

I.A.R., *see Pichon v.[L. J. Broekemeier, Inc.,* 99 Idaho 598, 586 P.2d 1042 (1978)]."

On remand, a different district judge entered the final decree of divorce. Rather than appeal from that final judgment, appellant merely moved to augment the appellate record with the final judgment and other appropriate documents.

At this stage of the controversy, therefore, we have only a premature notice of appeal taken from an unappealable order. Ordinarily, a premature appeal taken before any final order is entered must be dismissed. *Kraft v. State,* 99 Idaho 214, 579 P.2d 1197 (1978). *Cf.* I.A.R. 17(e) (although this rule provides that an appeal from a final judgment or order includes all orders, judgments and decrees *subsequently* entered, there is no similar provision for premature appeals taken from non-appealable orders). Accordingly, I would advocate dismissal of this appeal were it not for the fact that this Court, in its order of March 2, 1979, merely *remanded* rather than *dismissed* the appeal, thus indicating to the parties that the appeal was still properly pending before the Court. If the Court had dismissed the appeal from the custody order, as it should have, then the appellant would have been free to file a new notice of appeal after the entry of the final divorce decree, thereby appealing from the custody order under I.A.R. 17(e). To the extent that this Court's March 2 order may have misled the parties, I concede, with some hesitation, that this appeal should be entertained.